# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNIVERSAL IMAGINE PRINT GROUP, LLC,  )
d/b/a IMAGINE PRINT GROUP  )
  )
          Plaintiff,  )
  )
  v.  )  **07CV6720**
  )  **JUDGE KOCORAS**
JAMES MULLEN,  )  **MAGISTRATE JUDGE COX**
  )
          Defendant.  )

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

UNIVERSAL IMAGINE PRINT GROUP, LLC. d/b/a IMAGINE PRINT GROUP, ("Imagine Print Group"), by its attorneys, Horwood Marcus & Berk Chartered, complains of the Defendant, JAMES MULLEN ("Mullen") alleging as follows:

### Statement Of The Case

This case arises under the Computer Fraud And Abuse Act 18 USC §1030 *et. seq.*, the Illinois Computer Tampering Act, 720 ILCS 5/16D-1, *et. seq.*, and other pendent common law theories, arising out of Mullen's misappropriation and subsequent destruction of confidential electronic data stored in the desktop computer used by him during the five year period of time that he was employed by Imagine Print Group as its Sales Manager.

### The Parties

1.     Imagine Print Group is an Delaware corporation with its principal place of business located in the County of Cook, State of Illinois. Imagine Print Group operates a commercial printing business that serves a variety of customers throughout the graphic arts industry.

citizen of the State of Illinois.

## Jurisdiction and Venue

3.      Jurisdiction is vested in this Court pursuant to 18 U.S.C.§1030(g), as well as principles of pendent or supplemental jurisdiction.

4.      Venue properly resides in this District pursuant to 28 U.S.C. 1339(a)(2), in that the events giving rise to this action occurred in this District.

## Factual Allegations Common To All Counts

5.      On or about May 1, 2004, Imagine Print Group hired Mullen as its Sales Manager, to oversee and manage the activities of its sales force.

6.      At all times relevant to the exercise of his duties as Sales Manager, Mullen had unrestricted access to confidential pricing information, sales information and other information relating to Imagine Print Groups' marketing and sales activities.

7.      Because of his managerial level job responsibilities and his corresponding access to highly sensitive information, on or about February 1, 2005, Mullen was required to execute a written Non-Disclosure Agreement (the "Agreement"), in consideration for which Mullen received the sum of $1,700 (*See*, February 1, 2005 Non-Disclosure Agreement, attached as Exhibit A).

8.      By executing the Agreement Mullen agreed that, as material condition of his continued employment with Imagine Print Group, he would faithfully adhere to the various covenants set forth in the Agreement.

9.      Specifically, by executing the Agreement covenanted and agreed that he would not disclose to others, or use for his own purposes during or after his employment with Imagine Print Group, any "Confidential Information" of Imagine Print Group.

10.    Pursuant to Paragraph 3(a) of the Agreement, the term "Confidential Information" is defined as follows:

> "Confidential Information" shall include, but not be limited to: the information of the Employer encompassed in all plans, financial information, and costs; the practices of the Employer or any of its clients, vendors or suppliers; the fees the Employer charges for its services (except for published fee lists); business, marketing and expansion plans, ideas, or strategies; financial performance and projections; employee compensation or other personnel information; information related to private internal communications, emails, or files whether written or in electronic format; the existence or terms of this Agreement; and all information, concepts or ideas in or reasonably related to the Employer's business that have not previously been publicly released by duly authorized representative of the Employer.  Any information of the Employer which is not readily available to the public shall be considered Confidential Information unless the Employer advises the Employee otherwise in writing, except as required by law.

11.    In addition to the above, by executing the Agreement Mullen covenanted and agreed that he would not disclose to others, or take or use for his own purposes, either during or after his employment with Imagine Print Group, any "Employer Property", unless such information otherwise became publicly known through legitimate origins.

12.    Pursuant to Paragraph 3(c) of the Agreement, the term "Employer's Property" is defined as follows:

> Employer's Property.  The Employee agrees that all documents and things, including but not limited to reports, plans and proposals that come into his possession by reason of his employment with the Employer, are the property of the Employer and shall not be used in any way adverse to the Employer's interests.  The Employee shall not deliver, reproduce or in any way allow documents, electronic files, things, or reproductions to be delivered to or used by any person or entity outside of the ordinary course of the Employer's business, without specific written direction or consent of the Employer's President or Vice-President.  Upon termination of employment with the Employer, the Employee immediately shall return all of the Employer's property to the Employer and [shall] not retain any copies of any such property.

13.    On November 9, 2007, Mullen abruptly resigned his position as Sales Manager,

13.     On November 9, 2007, Mullen abruptly resigned his position as Sales Manager, without advance notice.

14.     Immediately upon learning of Mullen's resignation a search of Mullen's office was conducted, during the course of which it was discovered that he had left no paper documentation in any desk drawers, file cabinets or other storage spaces.

15.     In addition to discovering the absence of any paper documentation, a search was conducted of Mullen's desktop computer, which was found to be devoid of any electronic data, all of which had apparently been erased by Mullen, prior to his resignation.

16.     In furtherance of his planned departure, approximately three weeks prior to his resignation, Mullen prepared a handwritten list of printing jobs that were then in pre-press stage and gave the list to a day shift pre-press operator, requesting that the operator download the indicated job files onto a computer disk.  When the day shift operator failed to comply with Mullen's request, he thereafter provided the same list to a night shift pre-press operator and reiterated the same request.  Upon information and belief, some or all of the requested job files were ultimately obtained by Mullen.  (See, handwritten list, attached as Exhibit B).

17.     Mullen's request for the subject job file information served no legitimate business purpose and was a material deviation from normal day-to-day business protocol in that he failed to present a changeable job ticket, as required by company custom and usage.

18.     As evidenced by his conduct alleged with greater particularity above, prior to his resignation, Mullen intentionally calculated and contrived to take with him both "Confidential Information" and "Employer Property" as those two terms are defined in the parties' Agreement.

19.     As evidenced by his conduct alleged with greater above, prior to his resignation, Mullen further calculated and continued to cover up the nature and extent of the "Confidential

alter, delete and/or remove all data previously stored in said same computer.

20.     Commencing on the Monday immediately following his resignation, Mullen began working for a direct competitor of Imagine Print Group.

**Count I**
**(Violation Of The Computer Fraud And Abuse Act)**

21.     Imagine Print Group realleges each and every allegation pled in Paragraphs 1 through 20 as Paragraph 21 of this, Count I.

22.     At all times relevant to the conduct of Mullen, as alleged with greater particularity above, there existed a federal statute commonly known as the Computer Fraud And Abuse Act ("CFAA"), 18 U.S.C. §1030 *et seq.* The CFA provides in relevant part, as follows:

> [W]hoever.... knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; 18 U.S.C. §1030(a) (5) (A)(i);

> By conduct described in clause (i)(ii) or (iii) of Subparagraph (a) [causes] (i) loss to 1 or more persons during any 1-year period.... aggregating at least $5,000 in value; 18 U.S.C. §1030 (a) (5) (B) (i);

> [Shall be liable to] any persons who suffer damage or loss by reason by a violation of this section [4] compensatory damages and injunctive relief or other equitable relief 18 U.S.C. §1030 (g)

23.     Mullen's wilful misappropriation of Imagine Print Group's "Confidential Information" and his wilful destruction of Imagine Print Group's computer data is a violation of the CFAA, pursuant to which Imagine Print Group is entitled to economic damages, injunctive relief and such further equitable relief as this Court may deem just and appropriate.

24.     Mullen's conduct, as alleged with greater particularity above, was undertaken without authorization and/or exceeded his authorized access to the desktop computer that he had been using in the three and one-half year period that he was employed by Imagine Print Group as

its Sales Manager.

25.    The desktop computer used by Mullen during the three and one-half year period that he was employed by Imagine Print Group as its Sales Manager was used in interstate commerce, and was a "protective computer" within the meaning of the CFAA.

26.    The monetary damages suffered by Imagine Print Group to date as a result of Mullen's wrongful misconduct have not yet been fully calculated, however, Imagine Print Group verily believes in good faith that the amount of such damages is far in excess of the minimum statutory amount of $5,000.00.

27.    Imagine Print Group has no adequate remedy at law for the damages occasioned by Mullen's wrongful misconduct. Money damages alone will not, and cannot, compensate Imagine Print Group for the loss of goodwill and business opportunities that it has suffered as a result of Mullen's action, which continue to harm and interfere with Imagine Print Groups business relationships.

28.    As evidenced by Mullen's calculated pre-resignation activities and his immediate subsequent employment with a direct competitor of Imagine Print Group, Mullen has demonstrated his willingness and intention to continue to conduct himself in a manner that violates the CFAA.

29.    As alleged with greater particularity above, Imagine Print Group has demonstrated that, unless he is restrained by this Court, Mullen will continue to engage in conduct that is violative of the CFAA, resulting in continuing irreparable harm to Imagine Print Group.

30.    As alleged and agreed in particularity above, Imagine Print Group has demonstrated a likelihood that it will prevail on the merits of its claims against Mullen.

31.    In the event that this Court were to grant the injunctive relief to Imagine Print Group that it is now requesting, the burden on Mullen would be slight, compared to the injury that has accrued and will continue to accrue to Imagine Print Group in the event the requested relief is not granted.  No injury will accrue to Mullen by virtue of an Order requiring him to conform his actions with the standards required by both the parties' Agreement and the CFAA.

32.    The granting of the injunctive relief by Imagine Print Group will not undermine or otherwise continue the public interest.  Indeed, an award of the requested injunctive relief will reinforce and accomplish the objectives of the CFAA.

WHEREFORE, UNIVERSAL IMAGINE PRINT GROUP, LLC d/b/a IMAGINE PRINT GROUP prays this Court enters judgment in favor of the Plaintiff and against the Defendant, JAMES MULLEN, as follows:

A.  Enter an Order temporarily, preliminarily and permanently enjoining Mullen from using or disclosing to any third-party "Confidential Information", and/or "Employer Property", as those terms are defined in the parties Non-Disclosure Agreement.

B.  Enter an Order mandatorily enjoining Mullen to return to Imagine Print Group all "Confidential Information" and/or "Employer Property" taken by Mullen at or prior to the time that he resigned as Sales Manager of Imagine Print Group.

C.  Enter an Order awarding to Imagine Print Group a money judgment in such an amount that may be reasonable to compensate Universal Imagine Print Group for any demonstrable damages it may have suffered as a result of Mullen's breach of the parties' Non-Disclosure Agreement.

D.  Enter an Order awarding prejudgment interest, pursuant to relevant State statute.

E.  Enter an Order awarding all costs and attorneys' fees incurred in the prosecution of the instant complaint.

F.  Such further relief as this Court may deem just and equitable.

**Count II**
**(Illinois Computer Tampering Act)**

33.     Imagine Print Group realleges each and every allegation pled in Paragraphs 21

through 32 as Paragraph 33 of this, Count II.

34.     At all times relevant to the occurrences that are the subject of the instant

complaint, there existed a certain statute commonly known as the Illinois Computer Tampering

Act ("ICTA") 720 ILCS 15/16D-3 *et seq.* which provides irrelevant part as follows:

> A person commits the offense of computer tampering when he
> knowingly and without the authorization of the computer's owner,
> as defined in Section 15-2 of this Code in excess of the authority
> granted to him:
>
> Inserts or attempts to insert a "program" into a computer or
> computer program knowing or having reason to believe that such
> "program" contains information or commands that will or may
> damage or destroy that computer, or any other computer
> subsequently accessing or being excess by that computer, or that
> will or may alter, delete or remove a computer program or data
> from that computer, or any other computer program or data in a
> computer subsequently accessing or being accessed by that
> computer, or that will or may cause loss to the users of that
> computer or the users of a computer which accesses or which is
> excess by such "program" 720 ILCS5/16D-3 (a)(4).

35.     In addition to the above, the ICTA further provides that whoever suffers loss by

reason of a violation of Subsection (a) (4) may, in a civil action against the violator, obtain

appropriate relief including reasonable attorney fees and other litigation expense (720ILCS

5/16D-3) (c).

36.     Mullen's willful misappropriation of Imagine Print Group's "Confidential

Information" and his willful destruction of Imagine Print Group's Computer data is a violation of

the ICTA, pursuant to which Imagine Print Group is entitled to economic damages, injunctive

relief and such further equitable relief as this Court may deem just and appropriate.

37.    Imagine Print Group has no adequate remedy at law for the damages occasioned by Mullen's wrongful misconduct.  Money damages alone will not, and cannot, compensate Imagine Print Group for the loss of goodwill and business opportunities that it has suffered as a result of Mullen's action, which continue to harm and interfere with Imagine Print Group's business relationships.

38    As evidenced by Mullen's calculated pre-resignation activities and his immediate subsequent employment with a direct competitor of Imagine Print Group, Mullen has demonstrated his willingness and intention to continue to conduct himself in a manner that violates the ICTA.

39.    As alleged with greater particularity above, Imagine Print Group has demonstrated that, unless he is restrained by this Court, Mullen will continue to engage in conduct that is violative of the ICTA resulting in continuing irreparable harm to Imagine Print Group.

40.    As alleged and agreed in particularity above, Imagine Print Group has demonstrated a likelihood that it will prevail on the merits of its claims against Mullen.

41.    In the event that this Court were to grant the injunctive relief to Imagine Print Group that it is now requesting, the burden on Mullen would be slight, compared to the injury that has accrued and will continue to accrue to Imagine Print Group in the event the requested relief is not granted.  No injury will accrue to Mullen by virtue of an Order requiring him to conform his actions with the standards required by both the parties' Agreement and the ICTA.

42.    The granting of the injunctive relief by Imagine Graphic will not undermine or otherwise continue the public interest.  Indeed, an award of the requested injunctive relief will

reinforce and accomplish the objectives of the ICTA.

WHEREFORE, IMAGINE PRINT GROUP, LLC. d/b/a IMAGINE PRINT GROUP, INC. prays this Court enters judgment in favor of the Plaintiff and against the Defendant, JAMES MULLEN, as follows:

A. Enter an Order temporarily, preliminarily and permanently enjoining Mullen from using or disclosing to any third-party "Confidential Information", and/or "Employer Property", as those terms are defined in the parties Non-Disclosure Agreement.

B. Enter an Order mandatorily enjoining Mullen to return to Imagine Print Group all "Confidential Information" and/or "Employer Property" taken by Mullen at or prior to the time that he resigned as Sales Manager of Imagine Print Group.

C. Enter an Order awarding to Imagine Print Group a money judgment in such an amount that may be reasonable to compensate Imagine Print Group for any demonstrable damages it may have suffered as a result of Mullen's breach of the parties' Non-Disclosure Agreement.

D. Enter an Order awarding prejudgment interest, pursuant to relevant State statute.

E. Enter an Order awarding all costs and attorneys' fees incurred in the prosecution of the instant complaint.

F. Such further relief as this Court may deem just and equitable.

## Count III
## (Breach of Contract)

43.    Imagine Print Group realleges each and every allegation pled in Paragraphs 33 through 42 as Paragraph 43 of this, Count III.

44.    The conduct of Mullen, as alleged with greater particularity above, constitutes a material breach and a continuing breach of the parties' Agreement.

45.    Imagine Print Group has fully performed its duties and obligations under the Agreement.

46.    Mullen's willful misappropriation of Imagine Print Group's "Confidential Information" and his willful destruction of Imagine Print Group's Computer data is a material breach of the parties' Agreement, pursuant to which Imagine Print Group is entitled to economic damages, injunctive relief and such further equitable relief as this Court may deem just and appropriate.

47.    Imagine Print Group has no adequate remedy at law for the damages occasioned by Mullen's wrongful misconduct. Money damages alone will not, and cannot, compensate Imagine Print Group for the loss of goodwill and business opportunities that it has suffered as a result of Mullen's action, which continue to harm and interfere with Imagine Print Group's business relationships.

48    As evidenced by Mullen's calculated pre-resignation activities and his immediate subsequent employment with a direct competitor of Imagine Print Group, Mullen has demonstrated his willingness and intention to continue to conduct himself in a manner that violates the parties' Agreement.

49.    As alleged with greater particularity above, Imagine Print Group has demonstrated that, unless he is restrained by this Court, Mullen will continue to engage in conduct that is violative of the parties' Agreement, resulting in continuing irreparable harm to Imagine Print Group.

50.    As alleged and agreed in particularity above, Imagine Print Group has demonstrated a likelihood that it will prevail on the merits of its claims against Mullen.

51.    In the event that this Court were to grant the injunctive relief to Imagine Print Group that it is now requesting, the burden on Mullen would be slight, compared to the injury that has accrued and will continue to accrue to Imagine Print Group in the event the requested

relief is not granted. No injury will accrue to Mullen by virtue of an Order requiring him to conform his actions with the standards required by both the parties' Agreement.

52.     The granting of the injunctive relief by Imagine Print Group will not undermine or otherwise continue the public interest. Indeed, an award of the requested injunctive relief will reinforce and accomplish the objectives of the parties' Agreement.

WHEREFORE, UNIVERSAL IMAGINE PRINT GROUP, LLC. d/b/a IMAGINE PRINT GROUP, INC. prays this Court enters judgment in favor of the Plaintiff and against the Defendant, JAMES MULLEN, as follows:

> A. Enter an Order temporarily, preliminarily and permanently enjoining Mullen from using or disclosing to any third-party "Confidential Information", and/or "Employer Property", as those terms are defined in the parties Non-Disclosure Agreement.

> B. Enter an Order mandatorily enjoining Mullen to return to Imagine Print Group all "Confidential Information" and/or "Employer Property" taken by Mullen at or prior to the time that he resigned as Sales Manager of Imagine Print Group.

> C. Enter an Order awarding to Imagine Print Group a money judgment in such an amount that may be reasonable to compensate Imagine Print Group for any demonstrable damages it may have suffered as a result of Mullen's breach of the parties' Non-Disclosure Agreement.

> D. Enter an Order awarding prejudgment interest, pursuant to relevant State statute.

> E. Enter an Order awarding all costs and attorneys' fees incurred in the prosecution of the instant complaint.

> F. Such further relief as this Court may deem just and equitable.

### Count IV
### (Breach of Fiduciary Duty)

53.     Imagine Print Group realleges each and every allegation pled in Paragraphs 5 through 20 as Paragraph 53 of this, Count IV.

54.    By virtue of his employment with Imagine Print Group, Mullen owed a fiduciary duty to Imagine Print Group until such time as he resigned on November 9, 2007.

55.    As alleged with greater particularity above, Mullen has breached the fiduciary owed by him to Imagine Print Group.

56.    Mullen's willful misappropriation of Imagine Print Group's "Confidential Information" and his willful destruction of Imagine Print Group's Computer data is a breach of fiduciary duty, pursuant to which Imagine Print Group is entitled to economic damages, injunctive relief and such further equitable relief as this Court may deem just and appropriate.

57.    Imagine Print Group has no adequate remedy at law for the damages occasioned by Mullen's wrongful misconduct.  Money damages alone will not, and cannot, compensate Imagine Print Group for the loss of goodwill and business opportunities that it has suffered as a result of Mullen's action, which continue to harm and interfere with Imagine Print Group's business relationships.

58.    As evidenced by Mullen's calculated pre-resignation activities and his immediate subsequent employment with a direct competitor of Imagine Print Group, Mullen has demonstrated his willingness and intention to continue to conduct himself in a manner that constitutes a continuing breach of his fiduciary duty.

59.    As alleged with greater particularity above, Imagine Print Group has demonstrated that, unless he is restrained by this Court, Mullen will continue to engage in conduct that constitutes a continuing breach of his fiduciary duty, resulting in continuing irreparable harm to Imagine Print Group.

60.    As alleged and agreed in particularity above, Imagine Print Group has demonstrated a likelihood that it will prevail on the merits of its claims against Mullen.

61.    In the event that this Court were to grant the injunctive relief to Imagine Print Group that it is now requesting, the burden on Mullen would be slight, compared to the injury that has accrued and will continue to accrue to Imagine Print Group in the event the requested relief is not granted. No injury will accrue to Mullen by virtue of an Order requiring him to conform his actions with the standards required by both the parties' Agreement and his fiduciary duty.

62.    The granting of the injunctive relief by Imagine Graphic will not undermine or otherwise continue the public interest. Indeed, an award of the requested injunctive relief will reinforce and accomplish the objectives of the ICTA.

WHEREFORE, UNIVERSAL IMAGINE PRINT GROUP, LLC. d/b/a IMAGINE PRINT GROUP, prays this Court enters judgment in favor of the Plaintiff and against the Defendant, JAMES MULLEN, as follows:

A. Enter an Order temporarily, preliminarily and permanently enjoining Mullen from using or disclosing to any third-party "Confidential Information", and/or "Employer Property", as those terms are defined in the parties Non-Disclosure Agreement.

B. Enter an Order mandatorily enjoining Mullen to return to Imagine Print Group all "Confidential Information" and/or "Employer Property" taken by Mullen at or prior to the time that he resigned as Sales Manager of Imagine Print Group.

C. Enter an Order awarding to Imagine Print Group a money judgment in such an amount that may be reasonable to compensate Imagine Print Group for any demonstrable damages it may have suffered as a result of Mullen's breach of the parties' Non-Disclosure Agreement.

D. Enter an Order requiring Mullen to disgorge all compensation received by him from Imagine Print Group for such period of time as they may be demonstrated to have been planning his departure.

E. Enter an Order awarding prejudgment interest, pursuant to relevant State statute.

F.  Enter an Order awarding all costs and attorneys' fees incurred in the prosecution of the instant complaint.

G.  Such further relief as this Court may deem just and equitable.

## Count V
### (Misappropriation of Trade Secrets)

63.     Imagine Print Group realleges each and every allegation pled in Paragraphs 5 through 20 as Paragraph 63 of this, Count V.

64.     The conduct of Mullen as alleged with greater particularity above, constitutes a violation of the Illinois Trade Secrets Act ("ITSA") 765 ILCS §1065/1, *et seq.*

65.     Imagine Print Group's "Confidential Information" is not generally known to the public at large or their competitors within the graphic arts industry.  Imagine Print Group derives an economic benefit from its protected "Confidential Information", and competitors of Imagine Print Group can and will obtain a material economic benefit, in the event Imagine Print Group's "Confidential Information" is disclosed by Mullen.

66.     At all times relevant to the occurrences which are the subject of the pending litigation, Imagine Print Group has undertaken reasonable efforts to maintain the secrecy of its "Confidential Information".

67.     Notwithstanding the above, Mullen has misappropriated Imagine Print Group's "Confidential Information" and will inevitably disclose such information to his new employer unless he is specifically enjoined from doing so.

68.     Upon information and belief, Mullen is using Imagine Print Group's "Confidential Information" in carrying out business on behalf of his new employer, who is a direct competitor of Imagine Print Group.

69.     Mullen's wilful misappropriation of Imagine Print Group's "Confidential

Information" and his wilful destruction of Imagine Print Group's Computer data is a violation of the ITSA, pursuant to which Imagine Print Group is entitled to economic damages, injunctive relief and such further equitable relief as this Court may deem just and appropriate.

70.    Imagine Print Group has no adequate remedy at law for the damages occasioned by Mullen's wrongful misconduct.  Money damages alone will not, and cannot, compensate Imagine Print Group for the loss of goodwill and business opportunities that it has suffered as a result of Mullen's action, which continue to harm and interfere with Imagine Print Group business relationships.

71.    As evidenced by Mullen's calculated pre-resignation activities and his immediate subsequent employment with a direct competitor of Imagine Print Group, Mullen has demonstrated his willingness and intention to continue to conduct himself in a manner that violates the ITSA.

72.    As alleged with greater particularity above, Imagine Print Group has demonstrated that, unless he is restrained by this Court, Mullen will continue to engage in conduct that is violative of the ITSA, resulting in continuing irreparable harm to Imagine Print Group.

73.    As alleged and agreed in particularity above, Imagine Print Group has demonstrated a likelihood that it will prevail on the merits of its claims against Mullen.

74.    In the event that this Court were to grant the injunctive relief to Imagine Print Group that it is now requesting, the burden on Mullen would be slight, compared to the injury that has accrued and will continue to accrue to Imagine Print Group in the event the requested relief is not granted.  No injury will accrue to Mullen by virtue of an Order requiring him to conform his actions with the standards required by both the parties' Agreement and the ITSA.

75.    The granting of the injunctive relief by Imagine Graphic will not undermine or otherwise continue the public interest. Indeed, an award of the requested injunctive relief will reinforce and accomplish the objectives of the ITSA.

WHEREFORE, UNIVERSAL IMAGINE PRINT GROUP, LLC. d/b/a IMAGINE PRINT GROUP, INC., prays this Court enters judgment in favor of the Plaintiff and against the Defendant, JAMES MULLEN, as follows:

A. Enter an Order temporarily, preliminarily and permanently enjoining Mullen from using or disclosing to any third-party "Confidential Information", and/or "Employer Property", as those terms are defined in the parties Non-Disclosure Agreement.

B. Enter an Order mandatorily enjoining Mullen to return to Imagine Print Group all "Confidential Information" and/or "Employer Property" taken by Mullen at or prior to the time that he resigned as Sales Manager of Imagine Print Group.

C. Enter an Order awarding to Imagine Print Group a money judgment in such an amount that may be reasonable to compensate Imagine Print Group for any demonstrable damages it may have suffered as a result of Mullen's breach of the parties' Non-Disclosure Agreement.

D. Enter an Order awarding prejudgment interest, pursuant to relevant State statute.

E. Enter an Order awarding all costs incurred in the prosecution of the instant complaint.

F.  Such further relief as this Court may deem just and equitable.

UNIVERSAL IMAGINE PRINT GROUP, LLC.
d/b/a IMAGINE PRINT GROUP, INC.

By: _____
        One of its Attorneys

Jeffrey H. Bunn
Megan M. Mathias
**HORWOOD MARCUS & BERK CHARTERED**
180 North LaSalle Street
Suite 3700
Chicago, Illinois 60601
(312) 606-3200
Attorney No. 34957

## VERIFICATION

Under penalty of perjury, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in **Complaint for Injunctive and Other Relief** are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

LANCE LUKA

# **Exhibit A**

## NON DISCLOSURE AGREEMENT

This NON DISCLOSURE AGREEMENT (the "Agreement") is made and entered into by and between Imagine Print Group whose principal place of business is located at 6125 West Howard, Niles, Illinois 60714 (the "Employer"), and Jim Mullen (the "Employee"), is effective as of January 31, 2005.

### Recitals

WHEREAS, the Employer is engaged in the business of Printing; and

WHEREAS, the Employer is employing the Employee in a position of Sales Manager contingent upon the Employee's execution of a non disclosure agreement, and the Employee desires to accepted the Agreement offered by the Employer; and

WHEREAS, the Employee will have access to client and employee information, financial records and projections and other confidential information of the Employer when he accepts the Employer's continued offer of employment; and

WHEREAS, the Employer desires to protect its confidential information, and the Employer and the Employee have agreed to restrict the Employee's ability to hinder or obstruct the Employer's business, both during and after his employment with the Employer;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby mutually agreed as follows:

1.    Recitals. The recitals set forth above shall constitute and be deemed an integral part of this Agreement.

2.    Consideration. The Employer offers to the Employee the sum of $1,700 as additional compensation, representing a 1% share of the annual net earnings for the eight months ending 12/31/2004.

3.    Confidentiality.

(a)    Definitions. "Confidential Information" shall include, but not be limited to: the information of the Employer encompassed in all plans, financial information, and costs; the practices of the Employer or any of its clients, vendors or suppliers; the fees the Employer charges for its services (except for published fee lists); business, marketing and expansion plans, ideas, or strategies; financial performance and projections; employee compensation, or other personnel information; information related to private internal communications, emails, or files whether written or in electronic format; the existence or terms of this Agreement; and all information, concepts or ideas in or reasonably related to the Employer's business that have not previously been publicly released by duly authorized representatives of the Employer. Any

information of the Employer which is not readily available to the public shall be considered Confidential Information unless the Employer advises the Employee otherwise in writing, except as required by law.

(b)    Prohibitions. The Employee hereby covenants and agrees not to disclose to others, or take or use for the Employee's own purposes or the purposes of others, during or after the Employee's employment by the Employer, any Confidential Information of the Employer, whether or not work product, unless such information becomes publicly known through legitimate origins. The Employee recognizes and agrees that this obligation applies to any business information that the Employer treats as confidential.

(c)    Employer's Property. The Employee agrees that all documents, and things, including but not limited to reports, plans and proposals that come into his possession by reason of his employment with the Employer are the property of the Employer and shall not be used in any way adverse to the Employer's interests. The Employee shall not deliver, reproduce, or in any way allow documents, electronic files, things, or reproductions to be delivered to or used by any person or entity outside of the ordinary course of the Employer's business without specific written direction or consent of the Employer's President or Vice President. Upon termination of employment with the Employer, the Employee immediately shall return all of the Employer's property to the Employer and not retain any copies of any such property.

(d)    Remedies. The Employee acknowledges that the Confidential Information of the Employer is of a special, unique, unusual, and intellectual character, which gives it a particular value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law. The Employee expressly agrees that, in addition to any other federal or state law rights or remedies that the Employer may possess, including but not limited to rights under the Oregon Trade Secrets Act, the Employer shall be entitled to injunctive and other equitable relief to prevent a breach of Section 3 of this Agreement.

4.    Applicable Law and Venue. This Agreement shall be governed by and construed in accordance with the common and statutory law of the State of Illinois. Venue shall lie only in the Northern District of Illinois, Eastern Division, or the Circuit Court of Cook County, Illinois.

5.    Entire Agreement. This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes and cancels all prior oral or written understandings or agreements. Nothing contained in this Agreement may be disregarded, eliminated, modified, or revised except upon written agreement by the parties hereto.

6.    Binding Effect and Benefit. The provisions hereof shall be binding upon and shall inure to the benefit of the Employee and his heirs, executors, assignees, and administrators, and the Employer and its successors and assigns.

-2-

7.    Waivers. No delay on the part of any party in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by any party of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

8.    Severability. Each provision of this Agreement shall be interpreted in such manner as to be effective under applicable law. If any provision of this Agreement or the application thereof to any party or circumstance shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or any other provision of this Agreement or the application of such provision to other parties or circumstances.

9.    Voluntary Agreement. The Employee represents and warrants that he has read and understood each and every provision of this Agreement, that he understands that he is free, prior to signing this Agreement, to obtain advice from legal counsel of his choice regarding any and all provisions of this Agreement, and that he has freely and voluntarily entered into this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

For Imagine Print Group

By: _____

Its: _____

Date: 2/1/05 _____

Agreement accepted by;

_____

Sales Manager

Date: 2/1/05 _____

S:\firm\099999\9999\C0385805 1

-3-

# **Exhibit B**

4048 | DLT 736        58745 28        78469 218

4048 2 736           57433 30        76707

4049 2 734           59950 37        79365 ON SERVER

40 528 736           61757 52

40994 742            61950 50

41904 752            63538 92

41934 755            65721 89

45983 809            68234 104

47905 847            68557 110

47903 847            70005 124        56930 — 017

47932 847            70288 128         54390 = 014
                     ADDRESS SCOPE

49810 879            71009 133

50506 894            71316 219

53704 936            71419 137

154390 ALT 14        72714 157

54432 14             76153 195

56850 13             78109 216

58086 24             78421 218

58229 25